The second case is CardioNet and Braemar Manufacturing v. InfoBionic, Inc., 2020, 2123, and 2150. Mr. DaCosta. Good morning. May it please the Court. Frank DaCosta for CardioNet. You don't need your mask as far as we're concerned. That's not quite true. There was an alternative ground that there was no infringement. That's a review of the merits that I'll get to, but the impetus for the decision was first precluding the evidence that was available. Well, that's one ground, but it is not the sole ground. Correct. Correct. We don't disagree with that. And I'm not sure I agree with your characterization of the sanction. The sanction was that you couldn't rely on the new infringement theories. And the result may have been that in the absence of those new infringement theories, that you didn't have a case. But it didn't say you can't – the judge didn't say you can't allege infringement. They said you can't rely – she said you can't rely on these new infringement contentions, right? Right, but that goes to the question about the merits. So when the judge got to the merits, the court said with respect to the predetermined criteria and the selector, you can't establish infringement without this evidence. Therefore, we're granting summary judgment. So the two go hand in hand. You're right, Your Honor. But they're alternatives, right? Correct. Okay. Correct. One of the things that bothers me the most here is that there was an opportunity to seek leave of court to amend your infringement contentions even late. And you didn't do that. I don't understand. What happened? Well, looking at the record, Your Honor, the way we interpret what happened in terms of the timeline is that – think about it from the perspective of CardioNet. Thinking that it had complied with the rule, it disclosed what claims were at issue, disclosed what products were at use. It disclosed the type of infringement, literal or doctor equivalence. So there was no clock going off in the head of CardioNet the way the judge would have expected in her summary judgment ruling. So with the continuing discovery, with claim construction, moving to expert reports, the record seems to indicate that CardioNet was comfortable moving forward with submitting its contentions in detail. What about the chart in the local rules, though, that explains the kind of information that you need to have in infringement contentions? I mean, everybody knows what infringement contentions are. You have to say what – how they practice all the elements of the claim. I mean, how can you not understand that? That's an important question, Your Honor, and it's central to the case. So I hope the court understands that if you look at the rule, the model rule, the standard rule as it existed, it required four things. One is identifying the claims, just which claims are being asserted. The second thing it required is the products, the products accused of infringement. The third thing that was required is the type of infringement. It's not what you're thinking about, the why. It's literally literal infringement or doctor equivalence. Well, you say that, but when you go to the local rules, there's a chart that says you could use it in this form. You can put it in chart form, but these are the things. It says claim limitation, accused component, basis of infringement contention. That is a lot of detail, and yet you never provided that. And, in fact, you even said, we don't know whether they practice these limitations. Well, we disagree with the statement that we said we didn't know. I know if you read the court's order, it looks like that's all we said was a disclaimer that we're not sure at this point, but that's not exactly what was there. There was a statement that said we, well, I don't want to paraphrase the statement, but essentially it made a statement that we're expecting more information. If we get it, we'll update, but that update with respect to what the rules require, claims, type of infringement, and product. Again, you're saying that this chart that explains the kind of detail you're supposed to have is irrelevant? It's not irrelevant, but it's not dispositive of the issue, because what CardioNet did provide satisfied the requirements of the rule. What do you understand? Is there a common understanding of what infringement contentions are? Here's why the answer is no, because if you look at the cases cited by both sides, O2 micro, the Boston University case, the Powermart case, what you learn from those cases is that in the O2 micro case, there actually was a requirement. It was the ND-Cal local rules. There is a requirement in that rule to provide the how infringement contentions, so that detail. If you look at the BU case, the Boston University case, the judge in that case said we have the ability to require more, but our rule does not. Subsequently, the rule has been amended, so it now requires the additional detail, but at that time, it did not. Where is this chart that you refer to? Yeah, the chart is at appendix 945. 945. And what you'll see is, to Judge O'Malley's point, we provided much more than just the literal response to the rules requirement. We actually did provide detail that includes pointing to elements within the accused product that satisfy the claim elements. We actually did provide that. I'm sorry, 945. What I have is a supplemental preliminary infringement. Right, now go forward. Maybe I misunderstood what you were saying. I thought there was a suggestion that there was a sample template chart provided by the district court. It's on page 2 of the local rules. I don't know where it is in the appendix. But the chart that I'm referring to, Your Honor, is in yellow. I understand your chart, but Judge O'Malley's pointing to a chart that's supplied together with the local rules. I don't recall that that chart was mentioned in the briefing. What does the local rules say about the chart, and what does the chart say? The information that we're referring to literally is the four things now. So it's the claims. But what does the chart say? I'm tampered, I'm sorry. The chart's not in the appendix. Are you familiar with what the local rule says about the chart? I mean, the briefs cite to the local rules, so you know what the local rules say, right? We do, and I've recited it to you. So if we want the textual book. No, you cited the first part of the local rule. So the rule is at appendix 87? 887. 887, correct. But that doesn't have a chart. I don't want to take up all your time with this, but I'm confused. Unlike Judge O'Malley, I didn't actually look at the local rules. I relied on the briefs. I don't see it mentioned in the chart. Correct. So what we'd like credit for, recognition, is not only do we comply with the categories of information that the rule identifies, but we also did provide a charted reference to specific text from CardioNet's documents and where CardioNet thought the infringing features were. I don't want to, we're running out of time. No, go ahead. I'm interrupting Judge O'Malley. Your theory of infringement here is that this selectivity requirement is satisfied by a doctor ordering a second set of data from the T-Wave filter. Is that the point? I'm sorry, Your Honor, I couldn't. Is your theory of infringement that the selectivity requirement is satisfied when the doctor orders a second run of data from the T-Wave filter? No, so there are two things. There's the predetermined criteria and the selector. Now, with respect to the doctor's involvement or the operator's involvement, the operator has the ability to identify whether or not they're abnormally tall T-Waves in the EKG and, if so, activate it. But it seems accepted that the accused product, the T-Wave filter is on. It's never turned off. There's not an ability to select one stream or another stream. And so my understanding, and you can correct me if I'm mistaken about this, is that your theory of infringement was that the selectivity criterion limitation was established by the fact that a doctor could ask that the thing be rerun. I saw that in your infringement contentions. Isn't that correct? Not exactly. I think you're confusing or confusing the two, the criteria and the selector. But your expert report specifically turns, your expert turns his conclusions with respect to infringement on the actions of the doctor. Yes, thank you. So the issue there is the structure that's claimed responds to a message. But the claim is agnostic as to where that message comes from. So what is the doctor doing that causes infringement? The doctor is, in one case, generating a message that triggers the structure in the claims. By having it done twice. So, for example, Your Honor, if you look at claim 11, we have communication interface, a real-time QRS detector, a frequency domain T-Wave filter, and a selector that activates a T-Wave filter with respect to the real-time QRS detector in response to a message. So to answer the court's question, the structure responds to a message. The claim does not. The doctor responds to the message. No, actually, the device. The device in claim 11 responds to the message, not the doctor. Wait, it says, your expert says he explained that the MOME system permits physicians and clinicians to send start new session messages based on their review and analysis of T-Waves in previous sessions. That's correct. And so it's the doctor, in your expert's view, that is activating. It's sending the message. But that doesn't mean that the doctor is integral to practicing the claim. So the doctor sends a message, and then the structure that's claimed responds to the message. Okay, but the doctor is the one who's selecting, right? The doctor is the message, in turn, causes the selection. That's correct. But that's important. Counsel, you're well into your rebuttal time. Do you wish to save it? I will just make one summary of the merits, that there were a couple of issues with respect to the merits evaluation. One is that the court read into Claim 1 a selector requirement. It doesn't exist in Claim 1. Also, the judge concluded that the predetermined criteria can't be met because of the operator's involvement, which is not true. The operator is initiating a message. The structure is responding to it. So those two things are not inconsistent. And then the last is that the court applied a different claim construction for the activate limitation than what was issued in the Markman state. So in Markman, the judge said, we're going to activate its plain and ordinary meaning so that we don't exclude the always-on embodiment. And when the court got to the evaluation of the merits, the court said, you can't prove infringement because the device is always on, so it's not activated. So that's inconsistent. But merits ruling is predicated on a ruling that's inconsistent with the claim construction. So I'll stop there and save the remaining time for rebuttal. We'll save two minutes for you. I appreciate that, Your Honor. Mr. Sanders. Good morning, Mayor. Please, go ahead. The district court's decision should be affirmed because the district court properly exercised its broad discretion to exclude the untimely infringement contentions that Cardionet put forth two and a half years too late in an expert report while never seeking leave of court. And because the district court properly ruled on the merits. What is this sample claim chart that's attached to the local rules? I didn't see reference to that in the brief. Is that referred to in the brief? Your Honor, the local rules are referenced in the brief. But not the chart. The chart itself is part of local rules, but it's not specifically referenced in the brief. What does the chart say? The chart, and I have copies I'd be happy to provide, says, could we get a copy of it? Please hand it to the clerk. The chart, and it's on page two when you receive it. While you're waiting for them to get the chart, can I ask you a preliminary question? Sure, ma'am. I'm just trying to make sure there's jurisdiction over this appeal. When the operative amended complaint was asserted, you asserted affirmative defenses but did not include a counterclaim. That's exactly right, Your Honor. That's why there is jurisdiction over this appeal. Okay, so you all abandoned those counterclaims. They were never pled. We only asserted affirmative defenses. There's case law all over the place from different jurisdictions about whether you have to re-plead your counterclaims to maintain them. It would seem to me you should, and so I just wanted to make sure you intended not to re-plead your counterclaims and you're not arguing that they still are standing. That's correct. We're only relying on affirmative defenses. That makes it easy. So if you were to prevail on infringement, we wouldn't need to reach the invalidity issue. That's exactly correct, Your Honor. And to get to Judge Dyke, your question about the chart, it's on page 2 of the contentions at the bottom. What the plaintiff is supposed to provide, the patentee, is a chart that has three things, claim limitation, accused component, and basis of, excuse me, it's on page 1, accused component and basis of infringement contention. I'm guessing that your friend on the other side will say, well, it says you may use this chart. What do we make of that? Your Honor, there was the parties fully understood and decided to use these charts. We received 300 pages, just about, of charts from CardioNet for six patents. For four of those patents, there was no issue. For two of those patents, CardioNet included footnotes for the key claim limitations, and that includes the 715 patent, saying that the evidence did not preclude practice of the limitations. CardioNet could identify no affirmative evidence that they were practiced and said the contentions will be updated. Okay, but wait a second. If this chart was so significant it matched the local rules, how come you didn't mention it in the brief? I mean, it seems a little odd that we would say, oh, the chart explains what's required by the local rules, and you didn't even mention it in the brief. How's that? Your Honor, this tortured construction of the local rules... No, no, you're not answering my question. If the chart is significant, how come you didn't mention it in the brief? We mentioned the local rules, and the charts were provided... We had charts from CardioNet. There was no question between the parties that charts needed to be provided. We had 300 pages of them. So, in your view, you don't get anything out of the chart that's not in the text of the local rule on which you did rely? Your Honor, we believe the text that's copied into the scheduling order is sufficient. Yes. Because the text includes the requirement to identify the documents on which the infringement contention is based. And CardioNet did not do that for the predetermined characteristic, predetermined criteria, and selector limitations. The documents that their expert relied on two and a half years later for the predetermined characteristic and predetermined criteria was medical literature, completely absent from their charts. What their charts did is not necessarily an interpretation of the local rule. The local rule on its face doesn't say you're to elaborate the basis for your contention that there's infringement here. It's more limited than that. Put the chart aside. But it does require any supporting documents to be identified. It does require that. And CardioNet, even according to their view of the local rule, did not do that. They did not identify the documents that support their contention that there's a predetermined characteristic, predetermined criteria, and selector in the system. They only identified medical literature for the first time as being the source of the predetermined characteristic or predetermined criteria in the expert report. And for the selector, they only identified the document, the source code, ECGProcessHandler.cs, that source code component, for the very first time in the expert report. That source code or any document disclosing that source code is nowhere identified in their contentions. In fact, the only thing that they can point to is a diagram for the overall software structure that's not even included for the selector limitation. They knew that they couldn't identify any evidence for those limitations, and that's why they dropped the footnote saying the evidence does not preclude practice of the contentions, not identifying any affirmative evidence, and saying the contentions will be updated. And we wrote them. We wrote them multiple times, saying that they did not have a Rule 11 basis to proceed. Could you turn to the merits of the infringement issue? Yes, I'd be happy to, Judge Steig. And it is the doctor here, to your question earlier, who is performing the alleged infringement. The system, the Infobionics system, all data comes in and goes through the alleged TUA filter every time. The system has no selectivity. You simply turn the system on, and that is what it does. It does that every time you turn the system on. And as your question went to earlier, their infringement theory is that turning on the system a second time after the doctor has perhaps recognized something in his or her mind is an act of infringement, and that cannot be squared with any of the claims. Both Claims 11 and 20 require a selector, and Claim 1 requires selectivity in a method claim by requiring an activating step in response to a message based at least in part on a predetermined characteristic. The system does not do that. Was there any construction of selector or selectivity? There was no construction of selector below, Your Honor. The plain and ordinary meaning was applied at the summary judgment stage, and that's part of the prejudice that we suffered because we could have disposed of this case earlier if we had known that CardioNet was going to take the position that a selector is simply a data component that passes all valid data all the time, every time, and has no selectivity whatsoever. What about the Quality Checks Worst Code? This is the ECGProcessHandler.cs. What it does is it passes all valid data all the time. If the data is obviously bad, then it is not passed along for the heart rate analysis. But the heart rate analysis occurs with the alleged T wave filter every single time in exactly the same way. There is no ability in the system to make it happen otherwise. That is why there is no selectivity in the system, and there cannot be infringement as a matter of law. Counsel, with the passing of the papers back and forth, I missed something that was said. Are you not pursuing your cross-appeal on the 101 question? Judge Larry, we are absolutely pursuing our cross-appeal. To be clear, the court does not need to reach the cross-appeal if the court affirms the judgment of the district court, only if the court were to decide that it could not affirm that judgment, which we submit the court does not need to go there, then the cross-appeal becomes relevant. Then the court would need to reach the 101 issue. But you are saying that the 101 issue is framed for us as an affirmative defense. Exactly. You might spend a minute addressing the cross-appeal. I would be happy to, Your Honor. These claims are invalid under Section 101 because it is simply applying the abstract idea of filtering data when necessary to obtain an accurate heartbeat count. And these claims at Step 2 add nothing that is even arguably invented. What's your distinction between the last cardiac event case that we had where we did not say that it was ineligible and this one? In the last cardio net case, the issue that the court found no evidence on at the pleading stage was whether the claims in fact reflected human activity that had been practiced. That is not an issue on this field. That has been admitted by cardio net below. Cardio net admitted, and I will give the appendix sites, at appendix 9000, page 47 of the transcript, lines 8 to 11, admitted that the physician can do this. The physician may be able to look and figure out there's a problem and not look at the T waves as R waves. The physician can simply ignore them. Cardio net said that also at appendix 8998, page 45, lines 17 to 24. There is no issue here that these claims simply automate what humans have long done. The way doctors traditionally would ignore the T wave is they would get a heart rate count that was twice as high because it was counting both T waves and R waves and they would divide by two. Divide by two? There's a suggestion here that the T wave filter claimed in this patent is somehow a custom T wave filter. What's your response to that? My response to that is the specification admits that's not the case. The specification admits that you can do this as a frequency filter. It's a frequency domain T wave filter that is simply embodied in a mathematical construct using a Fourier transform. That was admitted also in the briefing. I will get the site for that. That is at yellow brief 39, note 9, where Cardio net admitted that this T wave filter can be implemented using Fourier transforms. It is simply a mathematical algorithm that the specification admits can be implemented on a general purpose computer. It is no more a machine than the computer was a machine in Alice. The district judge almost agreed with you on 101. She found the claims abstract but having an inventive step. Then later on she said well maybe I'm not sure I was right on that. That's exactly right Judge Lurie. At the 101 motion stage what was argued to the court by Cardio net was that there was a novel selectable T wave filter. Then the court learned upon seeing Cardio net's infringement theory that their view of these claims was that it would cover a T wave filter that is always on. That is not selectable at all. Then the court realized that had the court had that information at the 101 stage there very well might have been a different outcome under section 101. While the court does not need to reach that issue we would submit that is the outcome that is appropriate here in validation of these claims as patent ineligible. I will reserve the remainder of my time for rebuttal unless there are further questions. We will do that. Mr. DeCosta. Take two minutes. Thank you Your Honor. I want to jump right back to Judge O'Malley's question about the template. The template requires identifying the claims, the accused components and the basis of infringement. That is exactly what the letter of the rule says. It is not the how. If you look at the chart at 945 and I won't take the time to go through it now. Basis of infringement. You used these charts, right? Literal or doctrine of equivalence. I understand the confusion. Basis of infringement is not show me element by element what the substance is of the accused structure. Is your infringement a literal infringement case or DOA? Check one, check two. But you agree that you listed the claim limitations and then you said in your very charts with footnotes that we don't know whether they practice these. Not quite. I really would like the court to take the time, not now, but to go through each of the charts because we actually submitted documentation that shows in the accused device where the infringement occurs. And there was a statement that says we expect to get more and if we do we can update but updating was with respect to the four categories required by the rule. What about the documents? They're identified here as well. What about the documents that were newly identified in connection with your expert report that had never been identified before? Yes. There's more information in the expert report that's in the preliminary infringement contentions. And that's a question of fact, that if you compare the two, did one provide notice of what subsequently was submitted? And the court didn't do that analysis. I don't understand that. The question of fact is were there documents produced that had never been produced before? Yes. There was additional information that was continued to be produced after these contentions were submitted. So there were depositions, there was additional discovery running up through the expert phase. Do you have one final thought? I do. So on the question with respect to affirmative evidence infringement, it's in the charts, the claim is not directed to generating a message. So it's really a confusing argument to try to make the claim seem like they are claiming the generation of the message. The claims are to structure the response to a message. So it's not covering what the operator or the doc does. And with respect to 101, I don't have enough time, but what we'll say is with respect to 101, what is being claimed is structure that improves heartbeat detection. It is not a Fourier transform. It is not mathematics. It is actually structure that improves heartbeat detection. So if you answer your question, how does it compare to the 207 patent that this court dealt with? Was the district correct that what you argued at the 101 stage was different than your characterization of the technology when you got to the infringement stage? No, not at all. So it's not inconsistent. So with respect to validity, what we're saying is that the claims are not claiming what the doc does. The claims are claiming structure that responds to something the doc does. That's different. A message that the doc creates. And with respect to infringement, we have to identify a message. So it's not inconsistent that with respect to infringement, what we're doing is we're looking at the message that's generated by the operator. So there's a difference between what you're claiming and what you're responding to. So it's not inconsistent. But that was confused. Your expert at 9913 admitted quote, there are filters that are routinely employed in cardiology. So these T wave filters were routinely employed, right? No. The T wave filter that's selectively responsive to a predetermined message that improves heartbeat detection, that was not conventional. But T wave filters were conventional, right? Let's look at the... What's the answer? Your expert is saying, as I understand it, T wave filters are conventional and routinely used, correct? T wave filters as a general proposition existed. But not in the way it's claimed in the patent. So that's important. And counsel made a claim that it's undisputed... In terms of their ability to be selective? No. It's the ability to be... Let me go to the specification. So if you look at the patent specification, there are several instances where there are improvements from this system that are described in the spec. And that's something that in the 207 case this court dealt with. We're not credited. It should be credited here. What's the improvement? So at 715 column 3, line 52 to 60, it says the morphology of a cardiac signal can vary significantly from patient to patient. Sometimes the patient's EKG has a very tall T wave, which might result in false classifications, essentially double the calculations. What's the improvement? There's more. If you look at... Tell me what the improvement is. The improvement is a more accurate cardiac monitor. That's the improvement. The ability to not ignore tall T waves, but to filter them. Why is that important? Well, if you look at the arguments made by Infobonics, they're saying that the human operation is ignoring tall T waves. But the claimed invention actually doesn't ignore tall T waves. It filters them. And the difference is when you filter them, you can diminish the T waves, enhance R waves, and improve... Well, you filter them out, right? There's a difference between filtering and ignoring. So filtering is not the same thing as ignoring. The patent specification talks about the benefits of filtering versus ignoring. Thank you, counsel. Mr. Sanders, two minutes. On the cross-appeal. Yes, thank you, Your Honor. I'd like to just address a few points. First, Cardionet's argument was absolutely inconsistent at the summary judgment stage from what it argued earlier on 101. And this was stated by the district court at A20-21. Cardionet emphasized the importance of a selectable T wave filter at the earlier stage. But for infringement, Cardionet wrote off that limitation, contending that a system with an always-on T wave filter meets the claims. You can see the inconsistency by looking back at the earlier briefing at A9-10. Cardionet emphasized a special purpose cardiac monitoring apparatus selectively applying a T wave filter. And at A21-96, a novel selector. That, to your question, Judge Dike, was what Cardionet contended was the improvement. But that is simply the abstract idea, this idea of selectability. And T wave filters, to the questions asked earlier, were conventional. That's addressed at our gray brief at pages 7-9. We quoted an intrinsic patent, and their own expert admitted, this is on A62-84, that a 1969 patent discusses a T wave filter with a very sharp frequency cutoff that acts to pass R pulses while strongly inhibiting the passage of T pulses. Indeed, our expert mentioned it's been known since the 1930s. That's at A74-45. Thank you, Your Honors. Thank you, Counsel. Okay, so she did it.